## DAN LAMB *vs.* HORACE P. HICKS.

In an action on the Rev. Sts. *c.* 19, § 6, to recover double the value of a partition fence erected by the plaintiff, after the defendant's refusal to erect it, it is necessary to prove that the fence viewers gave the defendant notice of their meeting, before they adjudged the fence sufficient and appraised the value thereof: But as such adjudication and appraisement are one transaction, and are to be made at the same time, it is not necessary that the fence viewers should give the defendant a separate and distinct notice of the two purposes of their meeting.

When a plaintiff, who has erected a fence which the defendant has refused to erect, demands of the defendant double the sum ascertained and certified by the fence viewers, as the value of such fence, and also demands the fence viewers' fees, which are not legally taxed, the demand for each item is in its nature several, and the demand for the fees does not render void the demand for the other sum.

A partition fence on land that is covered, a part of the year, with the waters of an artificial mill pond, but is occupied and used as pasture or mowing land during another part of the year, is not a water fence, within the meaning of the Rev. Sts. *c.* 19, §§ 9, 14.

ASSUMPSIT for money laid out and expended. The action was founded on the Rev. Sts. *c.* 19, § 6, to recover double the value of a fence erected by the plaintiff on the division line between the plaintiff's and defendant's lands in Charlton. The plaintiff also claimed to recover a sum which he had paid as fees to the fence viewers, who assigned said fence to the defendant, to be made by him, and which he had neglected and refused to erect and maintain.

At the trial in the court of common pleas, before *Merrick*, J. the plaintiff gave in evidence a paper, dated August 17th 1844, signed by two of the fence viewers of Charlton, which (after stating that a controversy had arisen, between the plaintiff and defendant, about their rights in a partition fence between their lands, and that said fence viewers, on the application of the plaintiff, had given due notice to the defendant) set forth an assignment, by courses and distances, of the fence to be made and kept in repair by each of the parties.

Lamb v. Hicks.

and directed the plaintiff to build his part thereof within three days, and the defendant to build his part thereof within seven days.

It was in evidence that the above mentioned division and assignment were duly recorded in the town clerk's office in Charlton; that the defendant had due notice of the time and place of the meeting of the fence viewers, and of the assignment made by them, and the direction when he should make his part of the fence; that he did not make said fence, nor cause it to be made, within the time prescribed; and that the plaintiff made it after the expiration of said time.

The plaintiff also gave in evidence the following paper, signed by two of the fence viewers, who made the aforesaid division and assignment of the fence: "The undersigned, two of the fence viewers of the town of Charlton, duly chosen and sworn, having heretofore surveyed a certain fence between the enclosure of Dan Lamb and Horace P. Hicks in said Charlton, and after having adjudged the same to be insufficient and illegal, did order and direct that the said Horace P. Hicks should rebuild the same within seven days from the date of our order; and the said Horace P. Hicks not having complied with said order, the said Dan Lamb, at his own proper cost and charge, has rebuilt the same. And we notified the said Horace P. Hicks and Dan Lamb to appear at the time and place appointed by us to review the said fence, and after having examined said fence, we find it to be built according to law. And we now appraise the said fence at the sum of twenty dollars and sixty seven cents, and we certify that our fees for attending that service are as follows:

For viewing said fence half day each,                    $1·00
For surveying and appraising the same, and notifying, &c.,                    2·00
Paid us by Dan Lamb,                    $3·00
Charlton, December the 12th 1844.

Levi Hammond, } Fence viewers of Charlton."
Jacob Ward,     }

42 *

Upon its being objected by the defendant, that the plaintiff could not recover, unless notice to the defendant of the meeting of the fence viewers to adjudicate upon the sufficiency of the fence, and to appraise the same, were shown, evidence was introduced, tending to prove that the defendant had notice of the intended meeting of the fence viewers to appraise the value of the fence. And it was testified by a witness called for the plaintiff, that the defendant, at the time when the fence viewers gave him notice to appear, acknowledged notice, and that he had not appeared and would not appear, for the reason that he was not obliged to build any part of the fence on the line between him and the plaintiff; but no evidence was given of notice to the defendant of the intention of the fence viewers then and there to adjudicate upon the legality and sufficiency of the fence.

The judge ruled, and so instructed the jury, that no notice need be shown of the intention of the fence viewers to adjudicate upon the legality or sufficiency of the fence; but that notice of their meeting for the purpose of appraising the fence only, was sufficient, and all that the law required.

The plaintiff furthermore gave evidence that he exhibited to the defendant the fence viewers' aforesaid certificate of appraisement, &c. soon after it was made, and more than thirty days before the commencement of this suit, and demanded of him double the appraised value of the fence, and also the fees of the fence viewers. Upon its being objected by the defendant's counsel that the plaintiff could not recover any part of his claim, because the sum of two dollars, part of the fees of the fence viewers, so certified and demanded, was illegal, the fees not being made up and charged by the day, as Rev. Sts. *c.* 19, § 18, require, the plaintiff offered to remit all the fees; and the judge ruled, and instructed the jury, that the plaintiff, upon remitting the fees, was entitled to recover the residue of his claims, though the demand was of the fees as well as of double the value of the fence.

The plaintiff gave evidence that the defendant occupied and improved his land which was fenced.

The defendant gave evidence that this was the first division and assignment of fence ever made between the owners of the plaintiff's and defendant's lands, although they had, some years before, erected a fence, at their joint expense, (where the present fence now stands,) which was soon after carried off by the water. And the defendant contended that the plaintiff's right to recover, if any, was under § 10 of *c.* 19 of the Rev. Sts., which provides for division, &c. of fence, when lands have been occupied in common, without a partition fence between them. But the judge ruled that the action was rightly brought on § 6 of that chapter.

The defendant then gave evidence that he owned a grist mill, &c. in Charlton, and a reservoir connected therewith ; that the land, which was fenced, was covered by the waters of his mill pond and reservoir ; and that the said waters, when kept at the height of his dam, overflowed nearly all that part of his land where the fence assigned to him was erected, and extended over part of the plaintiff's land, thus submerging the greater part of said fence, so assigned to the defendant, a considerable part of the year. The defendant also put in his title deeds of the land covered by said pond and reservoir. One of these deeds was from the plaintiff, and the other from the plaintiff and his wife, and both conveyed to the defendant a right of flowing. And the defendant thereupon contended, that he could not legally be required to erect and maintain a fence upon land which he thus had a right, by grant from the plaintiff, to keep constantly overflowed by the waters of his pond, and which he did keep so overflowed for a considerable portion of every year. But the judge instructed the jury, that the defendant was bound to fence said land, if he occupied and improved it otherwise than by overflowing it by the waters of his pond.

The defendant also contended, that the fence viewers' proceedings could not bind him, because the fence was a water fence, and therefore should, by Rev. Sts. *c.* 19, § 14, have been assigned to the plaintiff and defendant in equal shares. And he gave evidence that much the greater part of the

fence that was overflowed and kept submerged, as aforesaid, was assigned to the defendant, while the greater part of the fence upon the dry land was assigned to the plaintiff. There was evidence, however, that there was no water near the line of the fence, when the fence viewers made the division, nor when the plaintiff made the fence. The judge instructed the jury that the defendant was not, by reason of any of the aforesaid matters, exonerated from erecting and maintaining his portion of the fence so assigned to him.

The jury found a verdict for the plaintiff, and the defendant alleged exceptions to the judge's rulings and instructions.

*Bacon*, for the defendant.

*C. Allen & Hyde*, for the plaintiff.

SHAW, C. J. This was an action to recover of the defendant double the value of a partition fence erected by the plaintiff, on the ground that the defendant had refused and neglected to erect that part of the fence which had been assigned to him to make, by the fence viewers, pursuant to Rev. Sts. *c.* 19, § 6. The case comes before the court by exceptions.

1. The first exception is, that the judge admitted the certificate of the fence viewers, certifying their opinion of the sufficiency of the fence built by the plaintiff, and their appraisement of the value, without giving notice to the defendant of their meeting for the purpose of adjudicating on the sufficiency of the fence.

The statute does not, in terms, direct notice to the parties; but it was held in *Scott* v. *Dickinson*, 14 Pick. 276, as the reasonable construction of the similar *St.* of 1785, *c.* 52, that notice must be given.

It appears by the certificate of the fence viewers, that they did give notice to the parties of the time and place of their meeting, " to review the said fence," and that, having examined the same, and found it to be built according to law, they then proceeded to appraise the same. This would seem of itself to be sufficient evidence of notice.

But it appears by the exceptions, that some other evidence

was offered, to show that the defendant had notice of the intended meeting of the fence viewers to appraise the value of the fence, but declined to appear, for the reason that he was not obliged to build any part of the fence on the line between him and the plaintiff; but no notice to the defendant was offered to be proved, of the intention of the fence viewers, then and there to adjudicate upon the legality and sufficiency of the fence. The court instructed the jury, that notice of the fence viewers' meeting, for the purpose of appraising the fence only, was sufficient, and all that the law required.

The exception and the argument for the defendant seem to assume that the law requires two distinct meetings of the fence viewers, after the fence has been repaired; one, to determine on its sufficiency, and the other, to appraise its value, or, at least, if there be one meeting only, that there must be a separate and distinct notice of the two purposes. We do not so understand the law. The Rev. Sts. c. 19, § 6, do not prescribe, in terms, how the double value therein provided for shall be ascertained, otherwise than by saying, in general terms, that it shall be ascertained and recovered, in the manner provided in that chapter. This refers to § 4, which provides, that "when any deficient fence, built up or repaired by any complainant, as provided in the preceding section," (i. e. after the other party has neglected to do it, according to an order of the fence viewers,) "shall be adjudged sufficient, by two or more of the fence viewers, and the value thereof, together with their fees, ascertained by a certificate under their hands, the complainant shall have a right to demand," &c. The judging of the sufficiency of the fence, and ascertaining the value, are all one transaction, to be done at one time; and one notice, indicating the purpose, so that it may be reasonably intelligible, is sufficient.

2. The next exception is, that the plaintiff demanded the double damages, and also the fees of the fence viewers; that their fees were not legally taxed, because not taxed by the day as required by Rev. Sts. c. 19, § 18; and that therefore

the demand was for too much, and consequently illegal
and void. The plaintiff, at the trial, relinquished all claim
for their fees.

It appears by the case, that the plaintiff exhibited to the
defendant the fence viewers' certificate of appraisement, soon
after it was made, and more than thirty days before the com-
mencement of the suit, and then made a demand of double
the amount of the appraised value of the fence, (Rev. Sts.
*c.* 19, § 4,) and also the fees of the fence viewers. It appears,
by reference to the certificate, that the value of the fence
was separately appraised at $20·67 ; and they also certify
their own fees, one half day each, $1 ; notifying &c. $2 ; the
whole, $3. The statute prescribes that the fence viewers
shall be paid at the rate of $1 a day. But, supposing the
charge of $2, for surveying, notifying, &c. was illegal, of
which we give no opinion, we are of opinion that the demand
for each item was in its nature several, and that the demand
for the $2 would not render the demand for the other sums
void. The defendant might have paid the damage, and
refused to pay the costs, if by law he was not bound to pay
the latter. We think the demand was sufficient and the
direction right.

3. The third exception is, that the fence in question was a
water fence, specially provided for by the 9th or 14th section
of the statute. But we think otherwise. Sect. 9 provides
for a case where the boundary line between two proprietors
is a river, brook, pond or creek, which is not of itself a suf-
ficient fence, and where a fence cannot be made in such
waters, and on the true boundary line, without unreasonable
expense ; in which case, fence viewers are authorized to direct
a suitable fence, not on the true line. Such is not the present
case. The boundary of the parties is not a river, creek,
brook or pond. It is land, over both parts of which water is
spread, a part of the year, and during a part of the year it is
free from water, and is improved.

Sect. 14 provides that " when a water fence, or fence run-
ning into the water, is necessary to be made, the same shall be

done in equal shares." The case contemplated in this section is well defined in the quaint language of the province law, in a preamble to the original of this provision: " Whereas it may happen that the bound or line, betwixt man and man, may butt or end on, or run into, the sea, or some river or pond, whereby the water fence may be needful." Anc. Chart. 525. The purpose is sufficiently expressed in this 14th section ; a " fence running into the water." It contemplates a fence terminating at deep water, where it must be carried to such a distance into the water, that the depth of water itself becomes a sufficient fence. Such a fence it may be more expensive and difficult to make and maintain ; and therefore the legislature have thought it expedient to make a special provision for its being done in equal shares. But this cannot apply to land occasionally covered with water, but capable, a part of the year, of being mowed, pastured, and used as upland.

*Exceptions overruled.*